No. 96-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


CITY OF BILLINGS,

Plaintiff and Respondent,

v.

COUNTY WATER DISTRICT OF
BILLINGS HEIGHTS,

Defendant and Appellant.


APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Bruce A. Fredrickson, Antoinette M. Tease, Crowley,
Haughey, Hanson, Toole & Dietrich, Billings,
Montana

For Respondent:

James L. Tillotson, Billings City Attorney,
Billings, Montana

Submitted on Briefs: December 5, 1996

Decided:   February 28, 1997
                Filed:


_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Appellant County Water District of Billings Heights (the District) appeals from the order issued by the Thirteenth Judicial District Court, Yellowstone County, denying its application for a preliminary injunction.
We reverse.
The question before us is whether the District Court manifestly abused its discretion in denying the District's application for a preliminary injunction that would enjoin the City of Billings (the City) from enforcing against the District water rate increases approved by the Billings City Council.
BACKGROUND
In 1963, the City and the District entered into a contract whereby the District agreed to purchase water from the City.  The District in turn intended to sell the water to its own customers. The contract states, in relevant part:
(3)  Water Rate:

In addition to building the aforesaid 16-inch main from Sixth Avenue North and North Twelfth Street  to the pumping facilities, the District agrees to    pay for the water obtained from the City each month  at the "OP" rate as follows:

Water Rate per 100 Cubic Feet:

| First | 1M | $.37 |
|-------|------|------|
| Next | 1M | .23 |
| Next | 48M | .16 |
| Next | 50M | .12 |
| Next | 900M | .08 |
| Over 1,000,000 | | .07 |

Payment of the charges for water used by the District shall be subject to the same discount and

other rules applying to the accounts of other users
of City water.

The City agrees that it shall not apply to any
court, commission or other authority for any
increase in the District's aforesaid "OP" rate
unless it applies simultaneously for the same
percentage of increase in the rates which apply to
all other users of the City's water.

At the time the parties entered into the contract, the Montana Public Service Commission (PSC) controlled the setting of municipal utility rates. In City of Billings v. Public Service Commission (1981), 193 Mont. 358, 631 P.2d 1295, this Court held that the PSC could set water rates that were inconsistent with the water rate provisions of the 1963 contract between the City and the District, but that its authority to do so could only be exercised "if the contract poses an immediate threat to the utility's ability to serve or if the contract adversely affects the utility's rate structure." City of Billings, 631 P.2d at 1304.

However, in 1981, the Montana Legislature enacted the first of a number of statutes which effectively abrogated the PSC's power to oversee water rates. Section 69-7-101, MCA (1981), gave to municipalities the "power and authority to regulate, establish, and change, as it considers proper, rates, charges, and classifications imposed for utility services to its inhabitants and other persons served by municipal utility systems." The rates charged by the municipality had to be "reasonable and just," and could not be raised to yield more than a 12% increase in total annual revenues unless the increase was approved by the PSC. Sections 69-7-101 and -102, MCA (1981). Section 69-7-201, MCA, also enacted in 1981, authorized municipal utilities to create, with some limitations, their own operating rules. By 1995, with the amendment of 69-7-101, MCA and the repeal of 69-7-102, MCA, effectively allowing municipalities to set their own utility rates without PSC review, the control PSC once had over utility rates had diminished dramatically; the control and oversight of municipal utility rates was now largely in the hands of the municipalities themselves.

In 1993, the City increased its water rates. While the average city water customer experienced a 9.2% increase in her monthly water bill as a result of the rate increase, the District experienced a 32% increase in its monthly water bill. The District, in accordance with its belief that the 1963 contract prohibited the City from raising the District's water rate payment obligations by a percentage greater than the percentage increase imposed on its other customers, increased its monthly payment to the City by 9.2%.

In August 1994, the City initiated this action to recover from

the District the difference between the water rate it enacted in 1993 and the rate the District has been paying since that time. The District answered, alleging that the rate increase was, in a number of respects, unconstitutional.

On May 13, 1996, the Billings City Council enacted another water rate increase. This increase, effective July 1, 1996, raised the District's water bill by 123% over the 1993 rates. No other City water customer experienced as dramatic a percentage increase as did the District.

On May 14, 1996, the District filed an application for a preliminary injunction to prevent the City from enforcing the 1996 rate increase against the District until the court had an opportunity to rule on the constitutional issues raised by the District in its answer to the City's 1994 complaint. After a hearing, the court issued an order on June 28, 1996, denying the District's application. The District appeals from this order.

## STANDARD OF REVIEW

A ruling on a motion for preliminary injunction is subject to the discretion of the district court. Van Loan v. Van Loan (1995), 271 Mont. 176, 178-79, 895 P.2d 614, 615. We will review a district court's decision regarding a preliminary injunction motion to determine if the court has manifestly abused its discretion. Van Loan, 895 P.2d at 615 (citation omitted). If, however, the district court arrives at a conclusion of law, "no discretion is involved, and therefore, we review the district court's conclusions of law to determine whether the district court's interpretation of the law is correct." Knudson v. McDunn (1995), 271 Mont. 61, 64, 894 P.2d 295, 297 (citation omitted).

## DISCUSSION

Did the District Court manifestly abuse its discretion in denying the District's application for a preliminary injunction that would enjoin the City from enforcing against the District water rate increases approved by the Billings City Council?

The purpose of a preliminary injunction is to prevent "further injury or irreparable harm by preserving the status quo of the subject in controversy pending an adjudication on the merits." Knudson, 894 P.2d at 297-98. The District applied for a preliminary injunction pursuant to 27-19-201(3), MCA, which states that a preliminary injunction may be granted

(3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual; .... (Emphasis added.)

The District contends that the application here of the statutory

scheme which replaced PSC control over utility rates with municipal control ( 69-7-101, MCA (1981) (amended 1995); 69-7-102, MCA (1981)(repealed 1995); and, 69-7-201, MCA (1981) (collectively referred to herein as "the statutes")) impairs its contractual relationship with the City in violation of the Montana and United States Constitutions. The District further contends that because of the nature of a constitutional right violation, a legal judgment of monetary damages would not effectively remedy its injuries.

In Knudson we explained that a preliminary injunction may issue if the applicant can establish a prima facie case. Knudson, 894 P.2d at 298. The District contends that it has established a prima facie case of a violation of its constitutional contract clause rights, and that the court therefore erred in failing to grant the preliminary injunction.

However, the City argues that because statutes are presumed to be constitutional, City of Billings v. Laedeke (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349, and because the District is raising a constitutional challenge, to be successful here the District must prove "beyond a reasonable doubt" that the statutes are unconstitutional as applied, Fallon County v. State (1988), 231 Mont. 443, 445, 753 P.2d 338, 339. We cannot agree with the City that the District must "prove beyond a reasonable doubt" that the statutes are unconstitutional as applied; rather, the District must make out a prima facie case of unconstitutionality.

While the City's contention that a statute's presumption of constitutionality must be overcome by proof beyond a reasonable doubt is correct, that rule is nevertheless inapplicable here. In Laedeke and Fallon County, cited by the City, the rule was applied in the context of trials on the merits of constitutional challenges to a municipal ordinance and a legislative tax apportionment, respectively. See Laedeke, 805 P.2d at 1349-50; Fallon County, 753 P.2d at 339-40. Here, however, in the context of an application for a preliminary injunction, requiring the District to prove the statutes unconstitutional beyond a reasonable doubt would be directly at odds with this Court's holdings that a successful applicant for a preliminary injunction need only establish a prima facie case, Knudson, 894 P.2d at 298, and that "[an] applicant [for a preliminary injunction] need not make out such a case as would entitle him to final judgment on the merits," Porter v. K & S Partnership (1981), 192 Mont. 175, 183, 627 P.2d 836, 840 (citing Atkinson v. Roosevelt County (1923), 66 Mont. 411, 422, 214 P. 74, 78. Therefore, in support of its application for preliminary injunction, the District must establish a prima facie case of a violation of its rights under the contract clauses of the Montana and United States Constitutions.

The contract clauses of the Montana and United States Constitutions have generally been interpreted as "'interchangeable guarantees against legislation impairing the obligation of

contract.'" Carmichael v. Workers' Compensation Court (1988), 234 Mont. 410, 414, 763 P.2d 1122, 1125 (quoting Buckman v. Montana Deaconess Hosp. (1986), 224 Mont. 318, 325, 730 P.2d 380, 384; see also Art. II, Sec. 31, Mont.Const.; Art I, Sec. 10, U.S.Const. This Court employs a three-part test when analyzing a contract clause challenge:

(1)  Is the state law a substantial impairment to the contractual relationship?

(2)  Does the state have a significant and legitimate purpose for the law?

(3)  Does the law impose reasonable conditions which are reasonably related to achieving the legitimate and public purpose?

Carmichael, 763 P.2d at 1125.

As to part (1), we point out that "[t]otal destruction of contractual expectations is not necessary, and a law which restricts a party to gains reasonably expected from a contract is not a substantial impairment." Carmichael, 763 P.2d at 1125. The District argues that the application of the statutes granting the City control over utility rates substantially impairs the contractual relationship between the District and the City.

Specifically, the District argues that the statutes are unconstitutional as applied because they allow the City to modify the utility rates in the 1963 contract to which it is a party; this unilateral power was not contemplated by the parties when they entered into the contract. The District claims that the 1993 32% increase, and the 1996 123% rate increase, clearly manifest the substantial impairment caused by the application of the statutes in this matter; the District's percentage increase is many times higher than other City water users' percentage increase, contradicting the relevant language in the contract. The District explains that if the rate increases continue, it will no longer enjoy the benefit of the bargain for which it contracted in 1963.

The District's claims are supported by the record. Moreover, the City does not expressly deny that its actions violated the relevant language of the contract; rather, the City merely asserts that its actions, whatever their effect on the contract, were authorized by statute. For purposes of our review then, we presume as true the District's allegation that the City's 1993 and 1996 rate increases violate the language of the contract. We conclude that the District has made a sufficient showing that the application here of the statutes granting the City control over utility rates substantially impairs the District's rights under the 1963 contract.

Next, according to part (2), we must consider whether the

state has a legitimate and significant purpose for the law. Our review of the legislative history reveals that the general purposes behind replacing PSC control over municipal utility rates with municipal control were to avoid the cost and delay of PSC review of every proposed rate increase, and to allow municipalities to deal more immediately and directly with financial realities such as inflation. We conclude that these are legitimate state purposes.

Finally, with respect to part (3), we must consider whether the application of the statutes to the facts at issue here is reasonably related to achieving the legitimate and public purposes of the statutes. We point out at the outset that a heightened level of scrutiny applies when a governmental entity is a party to the contract. See Buckman, 730 P.2d at 385. As we stated in Buckman, quoting United States Trust Co. of New York v. New Jersey (1977), 431 U.S. 1, 25-26, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92, 111-12:

> The Contract Clause is not an absolute bar to subsequent modification of a State's own financial obligations. As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, complete deference to a legislative assessment of reasonableness and necessity is not appropriate [when] the State's self-interest is at stake.

Buckman, 730 P.2d at 385. In Buckman we also stated that "[t]he severity of the impairment [to the contract] increases the level of scrutiny to which the legislation is subjected." Buckman, 730 P.2d at 385.

We fail to see how the application of the statutes here, ostensibly allowing the City to modify its own contractual obligations, is reasonably related to the legitimate purposes of the statutes. To justify its rate increases, the City claims that the language in the 1963 contract limiting its ability to raise the District's rates is unrealistic, and that it needs to raise revenue. Also, the City states in its brief that "[i]f the rate provisions of the 1963 Contract were superseded by the PSC prior to the enactment of Sec. 69-7-101, MCA, then it stands to reason that the enactment of Sec. 69-7-101, MCA vested the City Council with that same authority for any utility rate increases."

We do not agree with the City's arguments. There is no relationship between the purpose of 69-7-101, MCA, avoiding the undue costs and delay of PSC rate hearings, and the City's need to raise revenue (and its "need" therefore to disregard what it considers unrealistic or outdated contract language). Moreover, the City's argument that its assumption of rate control from the PSC necessarily authorizes it to modify, "supersede," or otherwise

disregard its contractual obligations is flawed. Because the PSC, as overseer of rate increases prior to 1981, was able to "supersede" some of the language in the 1963 contract between the City and the District does not now mean that the City, in assuming the PSC's power, can "supersede" language in that same contract or any other contract to which it is a party, particularly when its reasons for doing so are not related whatsoever to the purposes of the statute which transferred to it control once held by the PSC.

We hold that the District has made a prima facie showing that the application in this case of the statutes granting municipalities control over utility rates violates its rights under the contract clauses of the Montana and United States Constitutions. The District has sufficiently shown that the City's rate increases, pursuant to the statutes and in violation of the rate increase provisions of the 1963 contract, substantially impair the contractual relationship between the District and the City. Further, the District has sufficiently shown that the City's reasons for utilizing the authority of the statutes to override the contractual language are not reasonably related to the legitimate purposes of those statutes. Therefore, pursuant to the second prerequisite for obtaining a preliminary injunction under 27-19-201(3), MCA, we must now determine whether the City's actions would "[tend] to render [a] judgment [in the District's favor] ineffectual."

The City argues that the District cannot meet this requirement because, despite its water rate increases, a judgment in the District's favor would be effective; assuming the District had been or will begin paying the increased rates, upon a judgment in its favor it could be recompensed the overpaid amount. More realistically, the City argues, because the District has not been paying the increased rates, and therefore essentially suffering no injury, the District has no need for an injunction.

The City's arguments are misplaced. The District requested that the court enjoin the City from enforcing the increased rates pending the outcome of a trial on the merits. The District alleges that the enforcement of the increased rates will severely harm, perhaps dissolve, its business. The manager of the District, in a sworn affidavit, claims that enforcement of the 123% increase will either cause the District to become financially insolvent, or will require the District to pass the increase on to its bondholders, who would then be authorized, because its rates would be substantially higher than those charged by the City, to petition for dissolution of the District. See 7-13-2351, MCA. These are not the types of injuries which could be effectively remedied by a monetary damages award after a trial on the merits. See Doran v. Salem Inn, Inc. (1975), 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648, 660 (threat of loss of business and threat of bankruptcy due to city ordinance are potential injuries worthy of

injunctive relief).

Moreover, the District's application for preliminary injunction is based on alleged violations of its constitutional rights. We are mindful that courts often consider constitutional rights violations as producing injuries which cannot effectively be remedied by a legal judgment. See, e.g., Elrod v. Burns (1976), 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (violation of First Amendment rights produces irreparable injury); Mitchell v. Cuomo (2d Cir. 1984), 748 F.2d 804 (violation of Eighth Amendment rights produces irreparable injury).

Lastly, for this Court, or any other court, to adopt the City's argument that the District has no need for an injunction because it is not paying the increased rates would, we believe, effectively encourage non-compliance with obligations absent legal authority to do so. The City has raised the District's rates, allegedly pursuant to statutory authority. Until the merits of the parties' respective claims regarding the propriety of raising the rates have been tried, it must be presumed that the City's actions were correct, see 26-1-602(15), MCA, and that it acted pursuant to statutes that are constitutional, see Laedeke, 805 P.2d at 1349. That being the case, we must also presume then that the District is obligated to pay the increased rates. It is the injunctive relief issued by the court, not the District's unilateral decision not to pay the increased rates, that has any significance with respect to the suspension of the District's performance of its obligations.

Therefore, the City's actions here, raising the District's water rates, allegedly pursuant to statutory authority, "[tend] to render [a] judgment [in the District's favor] ineffectual." The District has made a prima facie showing of a violation of its constitutional rights under the contract clause. Thus, the District has met the requirements of 27-19-201(3), MCA, and is entitled to a preliminary injunction. The District Court erred in failing to grant the injunction.

Finally, in its opening brief, the District requests that in the event this Court vacates the order denying the District's application for a preliminary injunction that we also instruct the District Court to waive the security requirement, pursuant to 27-19-306(1)(b)(ii), MCA. The record reveals that the District Court has not yet considered this matter, a matter wholly within its discretion. We will not deny the District Court the opportunity or ability to exercise its discretion with respect to this issue.

CONCLUSION

For the reasons discussed above, the order of the District Court denying the District's application for a preliminary injunction is vacated, and this matter is reversed. We hold here that the District, by establishing a prima facie case that its rights under the contract clauses of the Montana and United States

Constitutions have been violated and that a judgment in its favor would be "ineffectual," has met the requirements of  27-19-201(3), MCA, and is therefore entitled to the preliminary injunction for which it has applied.  In holding as we do, we comment neither on the merits of the District's constitutional claims, nor on the propriety or impropriety of waiving the security requirement pursuant to  27-19-306(1)(b)(ii), MCA; the former is irrelevant to a discussion of a preliminary injunction application, the latter within the District Court's discretion, as yet unexercised.

Reversed.


/S/  WILLIAM E. HUNT, SR.



We Concur:

/S/  J. A.  TURNAGE
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART



Justice Karla M. Gray, dissenting.



I respectfully dissent from the Court's opinion.  While I do not disagree that the Water District made a prima facie showing that the statutes at issue, as applied by the City, violate its rights under the contract clauses of the United States and Montana Constitutions, I cannot agree that the Water District has established that allowing the City to enforce the 1996 water rates would tend to render a later judgment in its favor ineffectual.  Nor do I agree with the manner in which the Court applies standards of review in this case.

At the outset, it is important to observe that our standard in reviewing a trial court's denial of an application for a preliminary injunction is "manifest abuse of discretion."  That the grant or denial of a preliminary injunction is a matter within the trial court's discretion is evident from the permissive language of the controlling statute, which states that an injunction "may" be granted when the enumerated circumstances are met.  See  27-19-201, MCA.  The Court, having correctly cited the applicable standard of review, never returns to it or discusses how the District Court abused its discretion in denying the Water District's application for a preliminary injunction.

Nor does the Court's reliance on the "conclusion of law" standard excuse its failure to properly apply the "abuse of

discretion" standard of review. I agree with the Court's implicit, but unstated, conclusion that the question of whether a party has made a prima facie showing is a legal question. Thus, to the extent we are reviewing a determination by the District Court that the Water District did not make a prima facie case of violation of its constitutional contract clause rights, it is proper to do so by determining whether that court's interpretation of the law is correct. The Court concludes, and I agree, that the District Court erred as a matter of law when it determined that the Water District had not made a prima facie case.

That conclusion, however, is unrelated to the District Court's ruling that allowing the City to enforce its 1996 water rates would not tend to render an ultimate judgment in the Water District's favor ineffectual. See 27-19-201(3), MCA. This is a discretionary call by the District Court, subject to the manifest abuse of discretion standard the Court cites. The Court refuses to apply the standard, however, preferring instead to merely substitute its own judgment for that of the District Court on this matter within the trial court's discretion.

It is my view that, on the record before us, the District Court did not abuse its discretion in deciding that allowing the City to enforce its 1996 water rates would not tend to render a judgment in the Water District's favor ineffectual. The record is very limited on this question and the Court's statements in this regard are, at best, general. It is true that the affidavit of Mr. Aarness, the Water District's manager, states that enforcement of the 1996 water rates will cause the Water District to "eventually" become financially insolvent--at some unspecified time in the future--if it does not pass the increases along to its customers. It is undisputed, however, that the Water District has $3,000,000 in unallocated reserves with which, presumably, it could pay the 1996 water rate increases over a significant period of time, either in whole or in part, to cushion the impact of the increased rates on its customers. The Water District has made no showing whatsoever that its available reserves would not be sufficient to absorb the entirety, much less only part, of the 1996 rate increase over the time period required for a decision on the merits in this litigation.

As an alternative to this insufficiently supported insolvency argument, Mr. Aarness' affidavit states that, if the Water District passes the water rate increases on to its customers, they "likely" will petition to dissolve the Water District because their rates will be substantially higher than those charged by the City. This statement is problematic in several regards.

First, affidavits based on personal knowledge, as Mr. Aarness' purports to be, are required to be based on admissible facts. They cannot properly be used to speculate or to predict the future actions of other people. No basis, much less any factual basis, is

provided for Mr. Aarness' statement. Thus, Mr. Aarness' view of the "likely" response of the Water District's customers in the event it passes the City's water rate increase along is not properly considered here.

Moreover, as a practical matter, the fact that the Water District's customers' water rates would be substantially higher than those paid by City residents would not necessarily result in a petition to dissolve the Water District. It is not as simple a matter as switching from water service by the Water District to water service by the City. The customers of the Water District are not individually or directly attached to the City water system; nor are they necessarily entitled to City water service at all absent the existence of the Water District. Thus, the "likelihood" of a petition to dissolve is minimal, absent some showing by the Water District that its customers had options or alternatives regarding water service. No such showing has been made here.

Finally, a petition to dissolve pursuant to 7-13-2351, MCA, even if one actually were signed by more than 50% of the freeholders of the district, does not dissolve the Water District. Such a petition is the beginning of a process, not the end of one. The Water District could be dissolved only if, after a public hearing, the board of directors determined that dissolution is in the best interest of the public and the Yellowstone County Commissioners approved the dissolution. Section 7-13-2351, MCA. Here, nothing of record supports reliance on the specter of dissolution of the Water District as a basis for this Court's determination that the Water District established that a judgment in its favor would tend to be rendered ineffectual by allowing the City to enforce its 1996 water rates during the pendency of this litigation.

Faced with this record, and with an opening brief by the Water District that does not even mention the requirements of 27-19-201(3), MCA, the statute under which it sought the preliminary injunction, the Court is compelled to rely on being "mindful that courts often consider constitutional rights violations as producing injuries which cannot effectively be remedied by a legal judgment." Indeed, the Court cites to decisions where courts have done so in situations where irreparable injury is produced by a violation of certain constitutional rights. Those cases involve First and Eighth Amendment rights, however, and I submit that a violation of such rights is entirely and qualitatively different from a potential violation of the contract clause, in which money is at stake, such as the case presently before us. Neither the Water District nor the Court explains or establishes how the potential violation of constitutional contract clause rights will produce injuries to the Water District which cannot be remedied by a legal judgment.

In addition, the "irreparable injury" cases are not applicable

here. Section 27-19-201, MCA, sets out a variety of circumstances under which a preliminary injunction may be granted. It is undisputed that the Water District brought its injunction application under 27-19-201(3), MCA, which is the focal point of both the Court's opinion and this dissent. The "irreparable injury" basis for seeking a preliminary injunction is contained in 27-19-201(2), MCA, which is not at issue here. Indeed, counsel for the Water District stated unequivocally during oral argument on its application that it was not even attempting to show irreparable injury.

I cannot agree with the Court's "stretch" to principles that have no application here or with its failure to properly apply our standard of review. I would hold that the District Court did not manifestly abuse its discretion in denying the Water District's application for a preliminary injunction.

/S/ KARLA M. GRAY

Justice James C. Nelson joins in the foregoing dissenting opinion.

/S/ JAMES C. NELSON