FILED

09/03/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0039

DA 24-0039

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 200

MONTANANS AGAINST IRRESPONSIBLE
DENSIFICATION, LLC,

       Plaintiff and Appellee,

  v.

STATE OF MONTANA,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-23-1248
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Austin Knudsen, Montana Attorney General, Michael D. Russell,
Thane Johnson, Alwyn Lansing, Michael Noonan, Assistant
Attorneys General, Helena, Montana

            Emily Jones, Jones Law Firm, PLLC, Billings, Montana

      For Appellee:

            James H. Goetz, Henry J.K. Tesar, Goetz, Geddes & Gardner, P.C.,
Bozeman, Montana

            Brian K. Gallik, Gallik & Bremer, P.C., Bozeman, Montana

      For Amicus Curiae Shelter WF, Inc.:

            Jesse C. Kodadek, Parsons Behle & Latimer, Missoula, Montana

For Amicus Curiae Citizens for a Better Flathead:

Peter Michael Meloy, Meloy Law Firm, Helena, Montana

For Amicus Curiae Families For Responsible Growth:

Michelle T. Weinberg, Michelle T. Weinberg, PLLC, Missoula, Montana

For Amicus Curiae Better Bozeman Coalition:

Brian F. Close, Attorney at Law, Bozeman, Montana

For Amicus Curiae Institute for Justice:

David F. Knobel, Crowley Fleck PLLP, Billings, Montana

Joseph Gay, Institute For Justice, Arlington, Virginia

Ari Bargil, Institute for Justice, Miami, Florida

For Amici Curiae Montana Legislators:

Joan K. Mell, III Branches Law, PLLC, Hamilton, Montana

For Amicus Curiae Land Use Consultants:

Dr. Andrew R. Thomas, Self - Represented, Helena, Montana

Submitted on Briefs: August 7, 2024

Decided: September 3, 2024

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 The State of Montana appeals the order of the Eighteenth Judicial District Court, Gallatin County, temporarily enjoining two laws passed during the 2023 Legislative Session: Senate Bill 323 ("SB 323") and Senate Bill 528 ("SB 528"). Because we conclude that Plaintiff Montanans Against Irresponsible Densification, LLC ("MAID") did not satisfy each of the statutory requirements for the grant of a preliminary injunction, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The 2023 Montana Legislature passed several pieces of legislation in an effort to address Montana's affordable housing problem, including SB 323 and SB 528 (collectively, the "challenged laws"). 2023 Mont. Laws ch. 445, § 1, 2023 Mont. Laws ch. 499, §§ 1-2 (SB 323); 2023 Mont. Laws ch. 502, § 1 (SB 528). SB 323, codified in §§ 76-2-304 and 76-2-309, MCA, provides in relevant part, "In a city with a population of at least 5,000 residents, duplex housing must be allowed as a permitted use on a lot where a single-family residence is a permitted use, and zoning regulations that apply to the development or use of duplex housing may not be more restrictive than zoning regulations that are applicable to single-family residences." Section 76-2-304(3), MCA. SB 528, codified in § 76-2-345, MCA, provides in relevant part, "A municipality shall adopt regulations . . . that allow a minimum of one accessory dwelling unit by right on a lot or parcel that contains a single-family dwelling." Section 76-2-345(1)(a), MCA. The challenged laws were scheduled to take effect on January 1, 2024.

3

¶3 MAID is a limited liability company consisting of homeowners in single-family neighborhoods in Whitefish, Bozeman, Billings, Missoula, Great Falls, Columbia Falls, and Kalispell. On December 19, 2023, MAID filed an amended complaint seeking declaratory and permanent injunctive relief prohibiting the State and its municipalities from implementing the challenged laws and two other measures not at issue in this appeal. MAID requested a declaratory judgment that the laws "may not be used by any person or governmental entity to invalidate or displace covenants that are more restrictive than those developed by Montana's municipal governments." Though it noted that "[a]s a matter of statutory interpretation, [the laws] do not purport to displace or supplant private covenants which are more restrictive[,]" MAID alleged that "[a]ny attempt to displace or supersede restrictive covenants, through application of [the laws] is unconstitutional as an impairment of the obligation of contracts . . . ."

¶4 MAID alleged further that the laws "are facially unconstitutional in violation of Montana's constitutional provisions regarding rights of public participation and rights 'to know'" and that "any attempt by municipalities to develop an ordinance pursuant to [the laws] is unconstitutional" because it denies Plaintiffs their rights to equal protection and due process. Regarding its equal protection claim, MAID stated, "Plaintiffs now exercise their inalienable rights of protecting their property and their inalienable right to seek safety, health and happiness in lawful ways. They also, in pursuing this lawsuit, seek to advance their right to a clean and healthful environment." MAID proposed that the laws create two classes of individuals: "one protected by restrictive covenants, the other not so

4

protected . . . ." It requested that the laws "be strictly scrutinized" by the court. It additionally alleged that the laws "do not pass constitutional muster under the strict scrutiny test or even a less rigorous standard of scrutiny, such as the 'mid-tier' scrutiny, or rational basis, because they are utterly arbitrary and capricious in relation to the professed governmental objective of facilitating affordable housing."

¶5     Simultaneously with its amended complaint, MAID filed a motion for a temporary restraining order and preliminary injunction against the two challenged laws.[1] In support of its motion, MAID submitted an affidavit from Glenn Monahan, a member of MAID.[2] Monahan stated:

> I dread the possibility of waking up one morning and finding that one of my neighbors has sold her property to a developer who is then erecting a multi-unit building or a duplex, or an accessory dwelling unit right next to our nice and carefully maintained single-family dwelling. This would be particularly disturbing if there was no public notice and no public hearing and this kind of development happened out of the blue.
>
> If such development aimed at increasing density in my neighborhood happens, I believe it will seriously and adversely affect the economic value of my property. More important than economic value is the moral, aesthetic neighborhood values that my wife and I share with the neighbors, all of which will be adversely affected if my neighborhood is impacted by development which is more dense . . . .

¶6     The State responded that MAID lacked standing to bring its motion. The State posited, "Plaintiff does not point to a specific project or development that is happening or

---

[1] We confine our discussion to the two bills against which the District Court granted a preliminary injunction, both of which pertain exclusively to matters of local zoning regulation.

[2] MAID also cites a declaration of Noah Poritz, another member of MAID, in support of its arguments on appeal. Because this declaration was filed after the District Court's grant of the preliminary injunction, we do not consider it in our discussion.

imminent that will actually affect Plaintiff or its members." It therefore argued that MAID was unlikely to succeed on the merits of its case and failed to allege an irreparable injury warranting preliminary relief. The State further contended that MAID's delay in bringing the case was inconsistent with its claim of irreparable harm. Regarding MAID's constitutional allegations, the State claimed that rational basis review was the appropriate level of scrutiny and that MAID was unlikely to succeed on the merits of any of its constitutional claims. It thus contended MAID had not satisfied each factor to prevail on a preliminary injunction.

¶7 On December 29, the District Court issued its order enjoining the State from implementing the challenged laws. The District Court determined that MAID had standing to bring the action and had met each statutory factor necessary to obtain a preliminary injunction. The District Court concluded:

> These measures, calculated to increase density in single-family zoned areas of Montana's cities[,] will result in irreparable injury to the members of the Plaintiff LLC. These include: deprivation of the members' constitutional right of public participation; unfair and invidious discrimination against single-family owners who must now absorb an arbitrary and disproportionate burden of increased density as opposed to those who are protected by restrictive covenants; and an arbitrary imposition of various conditions, including many who are similarly situated, but are treated differently because they reside in cities that either fall within or outside of the arbitrary definitions in the challenged measures.

The State appeals.

## STANDARD OF REVIEW

¶8 This Court reviews a district court's grant or denial of a preliminary injunction for a manifest abuse of discretion. *Driscoll v. Stapleton*, 2020 MT 247, ¶ 12, 401 Mont. 405,

6

473 P.3d 386 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 10, 389 Mont. 251, 405 P.3d 73). A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Planned Parenthood of Mont. v. State*, 2022 MT 157, ¶ 5, 409 Mont. 378, 515 P.3d 301 (citation omitted). "A manifest abuse of discretion is one that is 'obvious, evident, or unmistakable.'" *Driscoll*, ¶ 12 (quoting *Weems v. State*, 2019 MT 98, ¶ 7, 395 Mont. 350, 440 P.3d 4; *Davis*, ¶ 10). If the district court's decision on a preliminary injunction was based on legal conclusions, however, we review those conclusions to determine if the court's interpretation of the law was correct. *Driscoll*, ¶ 12 (citing *City of Whitefish v. Bd. of Cty. Comm'rs of Flathead Cty.*, 2008 MT 436, ¶ 7, 347 Mont. 490, 199 P.3d 201).

**DISCUSSION**

¶9       "Standing is a threshold requirement in every case." *350 Mont. v. State*, 2023 MT 87, ¶ 14, 412 Mont. 273, 529 P.3d 847 (citing *Bullock v. Fox*, 2019 MT 50, ¶ 28, 395 Mont. 35, 435 P.3d 1187). The District Court determined that MAID has standing to bring this action "solely on an interim basis and for purposes of deciding the issue of an interim injunctive relief . . . ." We agree that the facts alleged in the Amended Complaint are sufficient for the court to have allowed MAID to bring its request for preliminary injunction. A court must, however, evaluate standing at every stage of the litigation. *See Barrett v. State*, 2024 MT 86, ¶ 18, 416 Mont. 226, 547 P.3d 630 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992)). The District Court's preliminary determination thus does not foreclose further argument or inquiry on this issue

in the merits phase of the proceeding. Because we reverse the court's grant of a preliminary injunction, we decline to address the question further.

¶10 "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376 (2008) (citation omitted). Codified at § 27-19-201(1), MCA, Montana's preliminary injunction statute requires an applicant to establish four factors:

> (a) the applicant is likely to succeed on the merits;
>
> (b) the applicant is likely to suffer irreparable harm in the absence of preliminary relief;
>
> (c) the balance of equities tips in the applicant's favor; and
>
> (d) the order is in the public interest.

The 2023 Legislature amended the statute to adopt these four factors from the United States Supreme Court decision in *Winter*, 555 U.S. at 20, 129 S. Ct. at 374. 2023 Mont. Laws ch. 43, § 1. The statute provides further, "It is the intent of the legislature that the language in subsection (1) mirror the federal preliminary injunction standard, and that interpretation and application of subsection (1) closely follow United States [S]upreme [C]ourt case law." Section 27-19-201(4), MCA. "The applicant for an injunction provided for in this section bears the burden of demonstrating the need for an injunction order." Section 27-19-201(3), MCA.

¶11 Prior to the statute's amendment, § 27-19-201, MCA (2021), provided that an injunction order may be granted in the following cases:

(1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

(2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;

(3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;

(4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;

(5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15.

¶12  The prior version of the statute contained a disjunctive test. In other words, an applicant could obtain a preliminary injunction by showing proof of just one of the statutory subsections. *Mont. Cannabis Indus. Ass'n v. State*, 2012 MT 201, ¶ 14, 366 Mont. 224, 286 P.3d 1161 (citing *Sweet Grass Farms, Ltd. v. Bd. of County Commrs. of Sweet Grass County*, 2000 MT 147, ¶ 27, 300 Mont. 66, 2 P.3d 825). The current test is conjunctive. That is, the applicant for an injunction bears the burden of establishing the likelihood of each element: success on the merits; irreparable harm; balance of equities; and public interest.

¶13  Statutes enjoy a presumption of constitutionality. *Driscoll*, ¶ 16 (citing *City of Billings v. Cty. Water Dist. of Billings Heights*, 281 Mont. 219, 227, 935 P.2d 246, 250 (1997)). *See also Bd. of Regents of Higher Educ. of Mont. v. State*, 2022 MT 128, ¶ 10,

9

409 Mont. 96, 512 P.3d 748 (citing *State v. Knudson*, 2007 MT 324, ¶ 12, 340 Mont. 167, 174 P.3d 469). "In the context of a constitutional challenge, an applicant for preliminary injunction need not demonstrate that the statute is unconstitutional beyond a reasonable doubt, but 'must establish a prima facie case of a violation of its rights under' the constitution." *Weems*, ¶ 18 (quoting *City of Billings*, 281 Mont. at 227, 935 P.2d at 251).

¶14 The first factor the District Court considered in its determination that MAID met its burden was whether MAID would be irreparably harmed absent preliminary injunctive relief. Citing Monahan's affidavit, the District Court determined that the "essence" of MAID's alleged irreparable injury is "concern[] that, should these challenged measures not be enjoined, they could wake up one morning to find that, without any notice at all, a new duplex or ADU ('Accessory Dwelling Unit') is going up next door in their previously peaceful and well-maintained single-family neighborhood." The court held, "This threatened injury is sufficient to establish the probability of irreparable injury for purposes of issuing interim injunctive relief." The District Court further adopted MAID's argument that "[a]ny threat to the deprivation of fundamental rights, such as the right to free speech, constitutes, for purposes of a preliminary injunction, irreparable injury *per se*." The court thereafter concluded that MAID was likely to succeed on the merits of its constitutional claims.

¶15 "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Wright, Miller, &

10

Kane, *Federal Practice and Procedure*, § 2948.1 (2013). Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely, not merely speculative, in the absence of an injunction. *Winter*, 555 U.S. at 22, 129 S. Ct. at 375 (citations omitted).

¶16 "We have recognized harm from constitutional infringement as adequate to justify a preliminary injunction." *Weems*, ¶ 25 (citing *City of Billings*, 281 Mont. at 231, 935 P.2d at 253; *Mont. Cannabis Idus. Ass'n*, ¶ 15 (holding that the district court "properly concluded that the loss of a constitutional right constitutes irreparable harm for the purposes of determining whether a preliminary injunction should be issued")). "Though not every constitutional infringement may support a finding of irreparable harm, federal courts most commonly recognize privacy and First Amendment violations as causing irreparable injuries." *Weems*, ¶ 25 (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976) (plurality); *Nelson v. NASA*, 530 F.3d 865, 881-82 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134, 131 S. Ct. 746 (2011); *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). *See also* 11A Wright, Miller, & Kane, *Federal Practice and Procedure*, § 2948.1 (2013) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary."). The District Court alluded to this body of law when it noted the infringement of the right to free speech as irreparable harm per se.

¶17    MAID argues the new laws pose a serious threat to their property values and quality of life.  Article II, § 3 of the Montana Constitution provides:

> All persons are born free and have certain inalienable rights.  They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways.  In enjoying these rights, all persons recognize corresponding responsibilities.

We have held that "the idea that the right to pursue employment and life's other 'basic necessities' is limited by the State's police power [] [e]mbedded in the plain language of the Constitution." *Wiser v. State*, 2006 MT 20, ¶ 24, 331 Mont. 28, 129 P.3d 133.  "Article II, Section 3 states that citizens have the right to pursue 'life's basic necessities . . . *in all lawful ways*.'"  *Wiser*, ¶ 24 (emphasis in original).  The Montana Constitution grants the fundamental right to acquire, possess, and protect property; but in the same provision, it "circumscribe[s] that right by subjecting it to the State's police power to protect the public health and welfare."  *Mont. Cannabis Ass'n*, ¶ 19 (quoting *Wiser*, ¶ 24) (emphasis removed).

¶18    In concluding that MAID had satisfied its obligation to show irreparable harm, the District Court likened this case to *Heffernan v. Missoula City Council*, 2011 MT 91, 360 Mont. 207, 255 P.3d 80, but we find the comparison inapposite.  In *Heffernan*, the Missoula City Council approved a zoning and preliminary plat for the thirty-seven-lot subdivision, Sonata Park, which neighbors challenged as arbitrary and capricious.  *Heffernan*, ¶ 1.  The District Court agreed and set aside the approval; the Missoula City Council appealed. *Heffernan*, ¶ 1.  Heffernan filed an affidavit stating that the western boundary of her

12

property shared the northeastern boundary of Sonata Park. *Heffernan*, ¶ 38. Her affidavit emphasized the likely impacts from the new subdivision, including an estimated 259 to 370 additional vehicle trips per day for 37 new homes, as well as increased noise, more pets, and less wildlife. *Heffernan*, ¶ 38. We determined "that these averments are sufficient to establish that Heffernan . . . is likely to be specially and injuriously affected by the subdivision." *Heffernan*, ¶ 38 (citations omitted).

¶19 MAID, in contrast, offered only generalized fears and supposition about the potential effects of SB 323 and SB 528. The only evidence MAID submitted prior to the District Court's ruling was Monahan's affidavit alluding to "the possibility" of finding "a multi-unit building or a duplex, or an accessory dwelling unit" going up next door. Monahan's additional alleged harms regarding public notice and participation stem from such a "possibility," which the United States Supreme Court in *Winter* expressly advised is not enough to support a preliminary injunction. *See Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76. In *Winter*, plaintiffs sued the Navy, seeking declaratory and injunctive relief on the grounds that Navy's training exercises off the coast of southern California violated the National Environmental Policy Act and other federal laws. *Winter*, 555 U.S. at 16-17, 129 S. Ct. at 372. The Ninth Circuit Court of Appeals granted plaintiffs' motion for a preliminary injunction, determining that plaintiffs had carried their burden to obtain a preliminary injunction by establishing at least a "possibility" of irreparable harm to the environment. *Winter*, 555 U.S. at 17, 129 S. Ct. at 372-73. The United States Supreme Court reversed and vacated the injunction, agreeing with the Navy that the Ninth Circuit's

13

"possibility" standard was "too lenient." *Winter*, 555 U.S. at 22, 129 S. Ct. at 375. The Court concluded, "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867 (1997) (emphasis added)). The District Court therefore abused its discretion when it entered a preliminary injunction based on the "possibility" of harm that MAID presented in support of its claim to irreparable injury.[3]

¶20    Regarding the final two factors in the preliminary injunction test—the balance of equities and the public interest—the court concluded without analysis that "[i]f the preliminary injunction is issued, little harm is done to the State." Because it already had determined that injury to MAID "would be irreparable," the District Court found "[t]he balance of equities tips in favor of issuing a preliminary injunction."

¶21    "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24, 129 S. Ct. at 376-77 (citations omitted). Both Amici Shelter WF, Inc., and Montana Legislators emphasize the legislative history showing the Legislature's efforts to advance the public welfare by addressing the housing crisis and the extensive deliberative

---

[3] *Heffernan*, in addition, involved whether the plaintiffs had established standing to bring the action, not whether they had made a sufficient showing of irreparable injury to justify a preliminary injunction. *See Heffernan*, ¶¶ 35-41.

process, including the creation of the Governor's Housing Task Force, that culminated in crafting the challenged laws. Given MAID's thin evidence of imminent harm, the District Court abused its discretion in finding the balance of equities to tip in favor of preliminary relief.

¶22 Finally, the State argues that rational basis review should govern any analysis of the challenged laws. The District Court did not find it necessary "at this interim stage" to determine which standard of review applies. Nor do we, as we have concluded that MAID did not satisfy other elements of the preliminary injunction standard. In the merits proceeding, however, the District Court will need to first determine which of the established levels of scrutiny is appropriately applied to the challenged laws: strict scrutiny, middle-tier scrutiny, or the rational basis test. *Driscoll*, ¶ 18 (citing *Mont. Cannabis Indus. Ass'n*, ¶ 16). Because it is not pertinent to our resolution of the issue on appeal, we decline to consider the State's argument.

## CONCLUSION

¶23 MAID failed to meet its burden of demonstrating all four factors to obtain preliminary injunctive relief. We reverse the District Court's grant of the preliminary injunction and remand for further proceedings in the case.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE