No. 87-111

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

LAWRENCE E. WALKER and DARLENE
E. WALKER,

        Plaintiffs and Appellants,

  -vs-

MAURICE A. WARNER, JR.,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Wellcome, Frost & Bartlett; Albert A. Frost,
        Bozeman, Montana

    For Respondent:

        Robert Kolesar, Bozeman, Montana

---

Submitted on Briefs: July 14, 1987

Decided: August 19, 1987

**AUG 19 1987**

Filed:

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The District Court for the Eighteenth Judicial District, Gallatin County, found Mr. Warner in contempt of court for failing to comply with a judgment ordering the parties to abide by a settlement agreement. The agreement established the Walkers' right to control the level of a pond which Mr. Warner complained was causing flooding on his property. We affirm.

The issues are:

1. Did the District Court err in finding Mr. Warner in contempt?

2. Did the District Court err in failing to grant Mr. Warner injunctive relief?

3. Did the District Court err in assessing costs against Mr. Warner?

Mr. Warner also argues that the Walkers' notice of appeal was untimely filed. Since the Walkers' brief does not raise any new issues on cross-appeal, that issue need not be discussed.

The Walkers and Mr. Warner are neighbors. Their subdivision formerly included four ponds, for aesthetic purposes. Water from the ponds caused a leakage problem in Mr. Warner's basement. This became one subject of an action previously appealed to this Court. See Haugen Trust v. Warner (1983), 204 Mont. 508, 665 P.2d 1132. After that action was remanded to District Court, the parties reached a settlement agreement whereby two of the ponds would be filled in and Pond 3 would be supplied with water and drainage through the use of culverts and pipes to be installed at shared expense. Specifically, the agreement provided:

2

6. All the parties agree that a discharge culvert will be installed as the outlet from Pond Number 3 to Pond Number 4 (which is located north of Number 3). Said culvert will be installed within the 10 foot easement as set forth in the covenants (Section III, Subsection I) under the road known as Mallard Lane and will be the same size as the culvert currently used as the discharge culvert from Pond Number 3. Larry Walker shall be entitled to control the water level in Pond Number 3 by adjusting the inflow and outflow of said pond.

. . .

7. All the parties agree to install a 12 inch underground pipe from Dry Creek along the path of the previous ditch located on the north side of Lot 3 (Block 9, Middle Creek Meadows Subdivision #3) to the existing concrete divider box, and from said divider to Pond #3 to serve as a water supply conduit. Walker shall maintain said pipe and control the flow of water therein.

In a judgment nunc pro tunc, the court ordered the parties to comply with the provisions of their agreement.

The rerouting of waters through the pipe system was completed. Some of the pipes lay under Mr. Warner's property. The Walkers chose not to use additional water available to supply the pond, from the "Haugen ditch." Because of a disagreement among the parties as to the necessary height of the exit pipe from Pond 3 to Pond 4, the pipe was lowered and then raised again. Then the Walkers determined that in order to maintain adequate water depth in Pond 3, they needed to partially block the flow of water to its other destinations at the culvert where it was diverted from Dry Creek and in the concrete divider box. They placed boards in these places, to block the flow of water. The boards caused back pressure producing wet spots on Mr. Warner's property. Mr. Warner spoke with Mrs. Walker about the problem, but they did not arrive at a mutually satisfactory solution. Each time

3

the Walkers would place boards at the culvert or in the divider box, Mr. Warner would remove them.

Mr. Warner's repeated removal of the boards led to this suit, in which he was accused of contempt of court for refusing to honor the Walkers' right to control the water level in Pond 3. The Walkers also complained of stagnation in the pond and asked that Mr. Warner be enjoined from interfering with their control of the flow of water through the system. Mr. Warner counterclaimed for damages to his property caused by misuse of the water level controls. He requested an injunction prohibiting the Walkers from interfering with the culvert serving Pond 3. After 2 days of trial, the District Court viewed the property. Mr. Warner was found guilty of contempt, was assessed a $500 fine, and was ordered to pay the Walkers' court costs. The court concluded that the stagnant conditions in the pond were caused by the Walkers' refusal to use the Haugen ditch water to help fill the pond, not by any action of Mr. Warner's.

I

Did the District Court err in finding Mr. Warner in contempt?

Mr. Warner argues that the system of pipes and culverts has engineering and operational shortcomings which became apparent shortly after installation. He asserts that he should not be held in contempt for his efforts to protect his property and to remedy these shortcomings within the few months following installation of the system.

Under § 3-1-501(1)(e), MCA, it is a contempt of the authority of the court to act in "disobedience of any lawful judgment, order, or process of the court." The District Court's judgment nunc pro tunc requires the parties to abide by the settlement agreement, which allows the Walkers to control the pipeline system supplying water to Pond 3.

4

Mr. Warner admitted at the hearing that he removed the boards the Walkers placed to control the water level in Pond 3, and that he knew he was interfering with the Walkers' right to control the water level. Although it is conceded that the system has intrinsic problems, nothing in the agreement or in the court's order to comply with the agreement gave Mr. Warner the authority to correct these problems; control was clearly given to the Walkers. The District Court entered extensive findings demonstrating that it had considered this issue in depth. We conclude that the District Court did not err in finding Mr. Warner in contempt.

II

Did the District Court err in failing to grant Mr. Warner injunctive relief?

Mr. Warner argues that the Walkers' use of boards to block the flow of water causes wet spots on his property and constitutes a temporary continuing nuisance. He suggests that the water level in the pond should be controlled through the use of Haugen ditch water, lowering the boards in the divider box, unblocking the culvert from the divider box to Pond 4, and reinstalling the pipe from Pond 3 to Pond 4. His proposal, he says, would not cause water seepage and saturation on his property, yet would allow maintenance of the proper water level in Pond 3. He asked the District Court to enjoin the Walkers from allowing the water level in the divider box to rise above a certain level and from blocking Dry Creek during November, December, January, and February. The court did not grant any such injunction.

The District Court found that "[a]ny water spots on Warner's property should be only temporary," in the opinion of the builder of the water system, Ray Johnson. Mr. Johnson also testified and the court found that the water would back up toward Mr. Warner's property, but not enough to be

5

significant. A civil engineer testified, and the court found, that it was necessary to block the creek to get a water flow into Pond 3 and that if the boards were removed, the flow through the pipes reversed and the pond began to drain. The court found that the area in which water spots occur "is a hundred yards or more from the Warners' residence and maintained grounds." The court concluded that the consequences of the actions necessary to maintain an adequate water level in Pond 3 is "slight leakage at the joints of the underground culvert and small wet spots on the surface of defendants' property," and that "[t]hese wet spots are not significant, do not interfere with defendant's use of his property and may, in time, disappear."

After reviewing the record, we conclude that the District Court's findings are supported by the testimony presented. Findings supported by substantial evidence will not be overturned. The District Court's conclusions as to the insignificance of the wet spots are not clearly erroneous, based upon the record. We hold that the District Court did not err in denying Mr. Warner injunctive relief.

III

Did the District Court err in assessing costs against Mr. Warner?

Mr. Warner maintains that under State ex rel., Foss v. District Court (Mont. 1985), 701 P.2d 342, 42 St.Rep. 845, costs should be taken out of the fine levied against the contemnor. He states that the $500 fine should be a part of, not in addition to, the $1,566.15 in costs awarded to the Walkers. Actually, the statement in Foss is that costs allowed in the court's discretion under § 25-10-103, MCA, are limited to those which can be taken out of the fine levied against the contemnor. Foss, 701 P.2d at 346. As the Walkers correctly point out, costs could be awarded to them under

6

either § 25-10-103, MCA, or under § 25-10-101(6), MCA, because this was an action for an injunction. The District Court's order does not state under which statute it took its authority to award costs. We must assume that the court correctly took its authority and calculated the judgment amount under § 25-10-101(6), MCA.

The Walkers ask that they be awarded their costs and attorney fees incurred on appeal. Costs on appeal of a civil case are automatically awarded to the successful party under Rule 33, M.R.App.Civ.P. The Walkers assert that they are entitled to their attorney fees under § 70-17-112(2), MCA, because this is an action to stop an encroachment on an easement. They also maintain that they are entitled to attorney fees under a provision in the subdivision's protective covenants. That provision provides for attorney fees in successful actions to enforce the covenants.

The District Court did not conclude that Mr. Warner's actions constituted an encroachment on an easement or a violation of the restrictive covenants. The problems with the ponds would be best resolved if the parties ironed out their differences in a spirit of cooperation among themselves, rather than resorting to litigation. Costs on appeal are awarded to the Walkers, and each party shall pay its own attorney fees.

Affirmed.

_____
Justice

We Concur:

_____

_____

7

John E. Steeley

R.C. Gulbrandson,

Justices