Justice Beth Baker delivered the Opinion of the Court.
***353 ¶1 Twenty years ago, this Court held that a statute preventing a woman from obtaining a lawful medical procedure-a pre-viability abortion-from a health care provider of her choosing unconstitutionally infringed her right to individual privacy under Montana's Constitution.
*7 Armstrong v. State , 1999 MT 261, ¶¶ 2, 75, 296 Mont. 361, 989 P.2d 364. We used the term "health care provider"
to refer to any physician, physician assistant-certified, nurse, nurse-practitioner or other professional who has been determined by the appropriate medical examining and licensing authority to be competent by reason of education, training or experience, to perform the particular medical procedure or category of procedures at issue or to provide the particular medical service or category of services which the patient seeks from the health care provider.
Armstrong , ¶ 2, n.1. Six years later, the Montana Legislature amended § 50-20-109(1)(a), MCA, to restrict the performance of pre-viability abortions to licensed physicians and physician assistants-certified. 2005 Mont. Laws, ch. 519, § 27. Plaintiffs, a Certified Nurse Practitioner (CNP) and Certified Nurse Midwife (CNM), filed this action in 2018, seeking a declaratory judgment that the statute violates Montana's constitutional right of privacy, equal protection, and dignity. They moved for a preliminary injunction. Both parties submitted affidavits, and neither requested an evidentiary hearing. After considering the affidavits and legal arguments presented by all parties, the District Court granted that relief on April 4, 2018. Pursuant to M. R. App. P. 6(3)(e), the State appeals on the alternative grounds that the District Court:
1. lacked jurisdiction because the Plaintiffs do not have standing to seek relief on their claims; or ***354 2. improperly issued an advisory opinion on claims that were not ripe for a preliminary injunction, did not establish irreparable harm, and did not seek to preserve the status quo.
We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶2 Plaintiff Jane Doe is a CNM and women's health nurse practitioner who practices midwifery in Montana and is proceeding in this matter under a pseudonym by leave of court. Plaintiff Helen Weems is a CNP in Montana who has been board certified in family practice by the American Nurses Credentialing Center since 1999 and re-certified every five years since.[2] Weems co-owns a primary care clinic in Whitefish that offers comprehensive health services for men and women, including reproductive health care services. The other owner is Susan Cahill, a licensed physician's assistant (PA), who performs early-term abortions as part of her practice. Both Plaintiffs allege that the performance of early-term abortions[3] is within their scope of practice and that they could perform such services but for Montana's statutory restriction.
¶3 In support of their motion for preliminary injunction, Plaintiffs presented evidence that APRNs routinely perform procedures within their scope of practice that are similar in skill to or more complex than early-term abortions and that carry comparable or greater risk. Plaintiff Weems described her experience with inserting and removing Intra-Uterine Devices (IUDs), dilating the cervix, and performing endometrial biopsy, a procedure that involves inserting instruments into the uterus to remove a tissue sample from the uterine lining. She described these procedures as comparable to those used in an aspiration procedure for abortion. She also attested that she has prescription authority from the Board of Nursing and a U.S. Drug Enforcement Authority (DEA) license, which permits her to prescribe schedules II through V controlled substances. Weems attested to her experience, prior to moving to Montana, with independently dispensing mifepristone and misoprostol for medication abortions-drugs that are ***355 not controlled substances and that carry less danger than controlled substances.
¶4 Plaintiffs also presented evidence to show that early abortion safety, efficacy, and *8 patient acceptability is the same as between physicians and physician assistants, nurse practitioners, and certified nurse midwives. Finally, they offered evidence of the limited access to abortion services in Montana and the impact the restriction on authorized providers has on the availability of those services.
¶5 The State submitted as its evidence a chart from the Montana Board of Nursing identifying and listing websites for the relevant national organizations that set standards for nurse practitioners and certified nurse midwives. It also submitted a one-page description of the scope of practice for nurse practitioners from the American Association of Nurse Practitioners and a one-page summary definition of midwifery and scope of practice of certified nurse-midwives and certified midwives from the American College of Nurse Midwives. The State pointed out that abortion is not listed within the scope of practice in these documents, nor is it included in the Montana Board of Nursing's administrative rules governing APRN standards and practice.
¶6 The District Court held that Plaintiffs were entitled to a preliminary injunction under § 27-19-201(2), MCA, because they had made a showing that enforcement of § 50-20-109(1)(a), MCA, prior to the conclusion of litigation would cause irreparable injury.
STANDARDS OF REVIEW
¶7 We review the grant or denial of a preliminary injunction for manifest abuse of discretion. Davis v. Westphal , 2017 MT 276, ¶ 10, 389 Mont. 251, 405 P.3d 73. A manifest abuse of discretion is one that is "obvious, evident, or unmistakable." Davis , ¶ 10 (quoting Shammel v. Canyon Res. Corp. , 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912 ). "The grant or denial of injunctive relief is a matter within the broad discretion of the district court based on applicable findings of fact and conclusions of law." Davis , ¶ 10 (citing Shammel , ¶ 11 ; Walker v. Warner , 228 Mont. 162, 166, 740 P.2d 1147, 1149-50 (1987) ). To the extent the ruling is based on legal conclusions, "we review the district court's conclusions of law to determine whether the interpretation of the law is correct." City of Whitefish v. Bd. of Cty. Comm'rs of Flathead Cty. , 2008 MT 436, ¶ 7, 347 Mont. 490, 199 P.3d 201. Issues of justiciability, such as standing and ripeness, also are questions of law, for which our review is de novo. Reichert v. State , 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455.
***356 DISCUSSION
¶8 1. Do Weems and Doe have standing to challenge the statute?
¶9 Courts have power to resolve actual cases or controversies, requiring a plaintiff to show, "at an irreducible minimum," that she "has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action." Schoof v. Nesbit , 2014 MT 6, ¶ 15, 373 Mont. 226, 316 P.3d 831 (internal quotations omitted). "A plaintiff's standing may arise from an alleged violation of a constitutional or statutory right." Mitchell v. Glacier County , 2017 MT 258, ¶ 11, 389 Mont. 122, 406 P.3d 427 (citing Schoof , ¶ 23 ).
¶10 The State argues that neither Weems nor Doe has standing to challenge § 50-20-109(1)(a), MCA, because abortion is outside their scope of practice. Irrespective of the statute, the State maintains that "[a]s of the issuance" of the District Court's preliminary injunction order, the harm posited by the Plaintiffs was conjectural and hypothetical. The State maintains that the Plaintiffs have not presented an actual case or controversy because their scope of practice-with or without the statute-does not extend to abortion procedures.
¶11 The State's standing argument is conjoined with its argument that the Plaintiffs' request for a preliminary injunction was not ripe for adjudication. Standing and ripeness are separate but related inquiries within a court's justiciability analysis:
To meet the constitutional case-or-controversy requirement for standing, the plaintiff must clearly allege a past, present, or threatened injury to a property or civil right, and the injury must be one that would be alleviated by successfully maintaining *9 the action. Note that standing may rest not only on past or present injury, but also on threatened injury. Ripeness and mootness, in turn, can be seen as "the time dimensions of standing." Ripeness asks whether an injury that has not yet happened is sufficiently likely to happen or, instead, is too contingent or remote to support present adjudication, whereas mootness asks whether an injury that has happened is too far beyond a useful remedy.
Reichert , ¶ 55 (internal citations omitted). "Whether framed as an issue of standing or ripeness, the [constitutional] inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." Reichert , ¶ 56 (quoting Wolfson v. Brammer , 616 F.3d 1045, 1058 (9th Cir. 2010) ) (alteration in original).
¶12 We address below the ripeness argument as it relates to the request for preliminary injunction. We have little trouble concluding, ***357 however, that Weems and Doe have standing to bring their complaint. We held in Armstrong that when "governmental regulation directed at health care providers impacts the constitutional rights of women patients," the providers have standing to challenge the alleged infringement of such rights. Armstrong , ¶¶ 8-13. We concluded that the plaintiff health care providers had standing "to assert on behalf of their women patients the individual privacy rights under Montana's Constitution of such women to obtain a pre-viability abortion from a health care provider of their choosing." Armstrong , ¶ 13.
¶13 The Plaintiffs' Complaint presents the same issue. The central dispute between the parties, discussed further below, is whether § 50-20-109(1)(a), MCA, is the regulatory barrier that prevents Weems and Doe from performing aspiration and medication abortion procedures, or whether the Board of Nursing must act first to authorize such procedures within the Plaintiffs' scope of practice before the statute comes into play. That issue presumably will be front and center as the litigation proceeds toward resolution on the merits. For standing purposes, however, the Complaint includes sufficient allegations that, but for the existence of the statutory restriction, Weems and Doe would be able to include medication and aspiration abortion procedures within their competency training and independent practices. Plaintiffs allege that APRNs are independent and autonomous health care practitioners, authorized to provide services within the scope of practice to which they are trained. The Complaint further alleges that the Montana Board of Nursing does not identify specific procedures that APRNs may or may not perform. Rather, the Board's regulations provide that APRNs have "full practice authority." The Complaint alleges that the Board "charges APRN licensees to know their own role and population focus using the standards of their professional organization." The Complaint alleges that "Montana law does not single out any health service as beyond an APRN's scope of practice, except abortion."
¶14 The State's standing argument is circular: it maintains that Plaintiffs cannot challenge the statute unless they are licensed to perform the procedure in question, but acknowledges that the statute prevents them from seeking such licensure. Weems and Doe plainly are impacted by the statute; as it stands, the law precludes the "appropriate medical examining and licensing authority" from making a determination that they are competent to perform the medical procedures at issue. Armstrong, ¶ 2, n.1. The Complaint's allegations are sufficient to show a "concrete," rather than an abstract or hypothetical, injury that allows Weems and Doe to have their claims ***358 adjudicated in the courts of Montana. See Schoof , ¶¶ 12-23 (concluding that individual alleging interest in county's fiscal decisions had standing to pursue claim that county violated constitutional and statutory right to know and public participation requirements); Gryczan v. State , 283 Mont. 433, 443-46, 942 P.2d 112, 118-120 (1997) (granting lesbian and gay plaintiffs standing to challenge constitutionality of statute criminalizing same-sex sexual conduct despite lack of prosecution, because they were "precisely the individuals against whom the statute is intended to operate"); Lee v. State , 195 Mont. 1, 7, 635 P.2d 1282, 1285 (1981) (holding that Uniform Declaratory Judgments Act allows a plaintiff to "test the *10 constitutional validity of a statute directly affecting him").
¶15 2. Did the District Court manifestly abuse its discretion or commit an error of law in granting preliminary injunctive relief?
¶16 The State argues that the District Court's preliminary injunction constituted an advisory opinion because neither Weems nor Doe presently is adequately trained to perform abortion procedures. The State maintains that the court made speculative assumptions in granting Plaintiffs the preliminary relief they requested. Because women seeking abortions "do not have a currently existing right" to have Weems or Doe perform that procedure, which the State argues would require additional action by the Montana Board of Nursing, the injunction will have no practical effect. The court's injunction prevents no harm, the State suggests, because there are no patients who could have abortion services provided by Weems or Doe irrespective of the statute. Finally, because Weems and Doe "have not been expressly authorized by their licensing authority to perform abortions," the State argues that the District Court's action upends the status quo, contrary to the purposes of a preliminary injunction.
¶17 Section 27-19-201, MCA, provides for issuance of a preliminary injunction on several enumerated grounds, only one of which need be met for an injunction to issue. BAM Ventures, LLC v. Schifferman , 2019 MT 67, ¶ 14, 437 P.3d 142 ; Davis , ¶ 24 ; Shammel , ¶ 15 ; Sweet Grass Farms, Ltd. v. Bd. of Cty. Comm'rs of Sweet Grass Cty. , 2000 MT 147, ¶ 27, 300 Mont. 66, 2 P.3d 825 ; Stark v. Borner , 226 Mont. 356, 359-60, 735 P.2d 314, 317 (1987). The District Court relied on subsection (2), allowing a preliminary injunction "when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant[.]" Section 27-19-201(2), MCA. An applicant for preliminary injunction must make "some demonstration of threatened harm or injury, whether under the 'great or irreparable injury' standard of ***359 subsection (2), or the lesser degree of harm implied within the other subsections of § 27-19-201, MCA." BAM Ventures , ¶ 16.
¶18 When considering whether to grant or deny a preliminary injunction, the trial court "should restrict itself to determining whether the applicant has made a sufficient case to warrant preserving a right in status quo until a trial on the merits can be had." Knudson v. McDunn , 271 Mont. 61, 65, 894 P.2d 295, 298 (1995) (citing Porter v. K & S P'ship , 192 Mont. 175, 181, 627 P.2d 836, 839 (1981) ). An applicant need only establish a prima facie case, not entitlement to final judgment. City of Whitefish , ¶ 25 (citing Knudson , 271 Mont. at 65, 894 P.2d at 298, and Porter , 192 Mont. at 183, 627 P.2d at 840 ). The court does not determine the underlying merits of the case in resolving a request for preliminary injunction. BAM Ventures , ¶ 7 (citing Caldwell v. Sabo , 2013 MT 240, ¶ 19, 371 Mont. 328, 308 P.3d 81 ). In the context of a constitutional challenge, an applicant for preliminary injunction need not demonstrate that the statute is unconstitutional beyond a reasonable doubt, but "must establish a prima facie case of a violation of its rights under" the constitution. City of Billings v. Cty. Water Dist. of Billings Heights , 281 Mont. 219, 227, 935 P.2d 246, 251 (1997).[4] "Prima facie" means literally "at first sight" or "on first appearance but subject to further evidence or information." Prima facie , Black's Law Dictionary (10th ed. 2014).
¶19 Our cases make clear that Montana's constitutional right to privacy is implicated when a statute infringes on a person's ability to obtain a lawful medical procedure. Armstrong , ¶ 62 ; Mont. Cannabis Indus. Ass'n v. State , 2012 MT 201, ¶ 27, 366 Mont. 224, 286 P.3d 1161. But not every restriction on medical care impermissibly infringes that right. Wiser v. State , 2006 MT 20, ¶ 15, 331 Mont. 28, 129 P.3d 133. " Armstrong did not hold that there is a right to see a health care provider who is not licensed *11 to provide the services desired." Wiser , ¶ 16. The right to health care instead is the
fundamental privacy right to obtain a particular lawful medical procedure from a health care provider [who] has been determined by the medical community to be competent to provide that service and who has been licensed to do so.
Wiser , ¶ 15 (quoting Armstrong , ¶ 62 ). Armstrong leaves no doubt that early-term abortion is a "lawful medical procedure" that may be ***360 performed for a consenting patient by a provider "determined by the appropriate medical examining and licensing authority to be competent [to provide that service]." Armstrong , ¶ 2, n.1, ¶ 62. The issue for ultimate resolution in this case is whether the Board of Nursing must approve APRNs, or Doe and Weems in particular, to conduct such procedures, or whether they could obtain competency to do so as part of an independent or collaborative practice but for the statutory restriction. Because Weems and Doe presently are not providing abortion services and are not expressly licensed to do so, the State argues that their request for preliminary injunctive relief is not ripe for adjudication.
¶20 Weems testified by affidavit that, without the statutory restriction, her DEA license presently would permit her to prescribe and dispense the medications for a medication abortion. Weems also attested that there is no list of services that determines what is in her scope of practice; rather, the scope includes care in which she trains and builds her skills under supervision sufficient to become a proficient provider.
¶21 This characterization finds support in the standards referred to in the State's exhibits. According to the American Association of Nurse Practitioners, APRNs are independent practitioners whose autonomous practice "requires accountability to the public for delivery of high-quality health care."[5] Materials referenced in the Board of Nursing chart[6] the State submitted include core competencies for Family Nurse Practitioners (FNPs), stating that the FNP "is prepared to care for individuals and families across the lifespan," including women's reproductive health and performance of gynecology procedures.[7] Women's health nurse practitioners are expected to have "knowledge of legal/ethical issues and regulatory agencies relevant to gender-specific ***361 issues," within which they are to provide "culturally appropriate reproductive and primary care for women of all ages" and prescribe medications "within [their] scope of practice." NONPF, Competencies , supra , at 82-84. "Independent practice" "[r]ecognizes independent licensure of nurse practitioners who provide autonomous care and promote implementation of the full scope of practice." NONPF, Competencies , supra , at 87.
¶22 The State's Exhibit C defines midwifery to encompass "a full range of primary health care services for women from adolescence beyond menopause."[8] The Standards for Practice of Midwifery, referenced in the Board of Nursing chart, indicate that the practice "is the independent management of women's health care, focusing particularly on pregnancy, childbirth, the post-partum period, care of the newborn, and the family planning and gynecologic needs of women."[9] The *12 core competencies in gynecologic care "include but are not limited to ... [c]ounseling, clinical interventions , and/or referral for unplanned or undesired pregnancies[.]"[10] The midwife must be "in compliance with the legal requirements of the jurisdiction where the midwifery practice occurs." ACNM, Standards , supra , at 1.
¶23 Administrative Rules of the Montana Board of Nursing recognize APRN practice as "an independent and/or collaborative practice" and provide that a licensed APRN "may only practice in the role and population focus in which the APRN has current national certification." Admin. R. M. 24.159.1406(1). The rules allow an APRN who is granted prescriptive authority to "prescribe, procure, administer, and dispense legend and controlled substances pursuant to applicable state and federal laws and within the APRN's role and population focus." Admin.
***362 R. M. 24.159.1461(1). The Board of Nursing's rules do not identify a specific list of medications the APRN may or may not prescribe. Weems's established prescriptive authority and prior experience prescribing and dispensing drugs for medication abortion comprise prima facie evidence that, but for the statute, she could do so in Montana as well. The record has not been developed regarding the Board of Nursing's position, if any, on the regulatory limits of APRN practice when it comes to aspiration abortion. Materials referenced in the Affidavit of Suzan Goodman, M.D., submitted by Plaintiffs, indicate that "there is a decades-long history of [APRNs, CNMs, and PAs] providing first trimester aspiration abortions in collaborative settings and training doctors in abortion care in states where physician-only restrictions do not exist."[11] ,[12] On review of the preliminary injunction record, we conclude that Plaintiffs presented adequate evidence to justify their claim for preliminary relief on the ***363 ground that the statute presents a barrier to their ability to develop competencies for and perform the lawful medical procedures of early-term abortion.
¶24 The State asserts that Plaintiffs nonetheless did not demonstrate irreparable harm because, as the District Court recognized, Weems has not completed her training in abortion care and Doe currently practices in a health care system that does not permit *13 abortions to be performed. Because of their own circumstances, the State posits that the Plaintiffs' request for preliminary injunctive relief was not ripe for adjudication.
¶25 We have recognized harm from constitutional infringement as adequate to justify a preliminary injunction. City of Billings , 281 Mont. at 231, 935 P.2d at 253 ; Mont. Cannabis Indus. Ass'n , ¶ 15. Though not every constitutional infringement may support a finding of irreparable harm, federal courts most commonly recognize privacy and First Amendment violations as causing irreparable injuries. See Elrod v. Burns , 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality); Nelson v. NASA , 530 F.3d 865, 881-82 (9th Cir. 2008), rev'd on other grounds , 562 U.S. 134, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011) ; Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville , 896 F.2d 1283, 1285 (11th Cir. 1990) ; McDonell v. Hunter , 746 F.2d 785, 787 (8th Cir. 1984) ; Deerfield Med. Ctr. v. City of Deerfield Beach , 661 F.2d 328, 338 (5th Cir. 1981). Plaintiffs' evidence of injury included affidavits that the statute prevents APRNs "from even being trained in abortion care in this State," including the "hands-on training [Weems] need[s] to complete [her] training." Weems also attested that, in the few weeks her clinic had been open, she had seen several patients eligible for a medication abortion who would have elected that method, but who were in the clinic when Cahill was unavailable and were unable to obtain the medication. Weems testified that delay can mean a patient becomes ineligible for a medication abortion or may have difficulty missing work or school and arranging transportation for a subsequent appointment, particularly when traveling from out of town. Without the statutory restriction, Weems's DEA license would allow her imminently to provide the lawful dispensation of the necessary medication.[13] The District Court did not manifestly abuse its discretion ***364 in finding that this evidence established that enforcement of the statute prior to the conclusion of litigation would cause irreparable injury.
¶26 Finally, the State argues that the District Court wrongly issued a preliminary injunction to reverse, instead of to preserve, the status quo. Unlike the plaintiff in Armstrong , the State urges, the Plaintiff providers have not been "engaged in the practice of providing abortions" and are not "expressly authorized by their licensing authority to perform abortions." Status quo means "the last actual, peaceable, noncontested condition which preceded the pending controversy." Porter , 192 Mont. at 181, 627 P.2d at 839 ; see also Davis , ¶ 24. That a statute has been on the books for some time is not the relevant inquiry when entertaining a request to enjoin it. See , e.g. , Gryczan , 283 Mont. at 443-44, 942 P.2d at 118-19. Weems and Cahill opened their clinic in February 2018. The State's argument misses the point that the condition the Plaintiffs contest is the bar posed to their practice by the physician/PA restriction and whether they otherwise would need express authorization from their licensing authority to engage in the independent practice of providing abortion services. The rights "preserv[ed] ... in status quo," Knudson , 271 Mont. at 65, 894 P.2d at 298, by the District Court's injunction are the rights of women patients to obtain the lawful medical procedure recognized in Armstrong . The Complaint contests the later-enacted statute's alleged infringement of those rights. Weems and Doe presented sufficient evidence at this stage of the proceedings to support their claim that the statute bars their ability to perform the lawful medical procedures of medication or aspiration abortion and to complete appropriate training for the aspiration procedure. Given the fundamental right at issue, that showing was sufficient to establish that their claim for preliminary injunction was not "too contingent or remote to support present adjudication," Reichert , ¶ 55, and that enforcement of the statute prior to conclusion of the litigation would cause irreparable harm. The State has not shown an error *14 of law or manifest abuse of discretion in the District Court's ruling.
CONCLUSION
¶27 The District Court's April 4, 2018 preliminary injunction is affirmed.
We Concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

Both CNPs and CNMs are Advanced Practice Registered Nurses (APRN). See Admin. R. M. 24.159.1413.

The procedures Plaintiffs seek to provide are aspiration and medication abortions, both of which are carried out in the early stages of pregnancy. Medication abortion is available up to ten weeks, and aspiration abortion is an outpatient procedure used throughout the first trimester.

The moving party's burden to defeat the presumptive constitutionality of a statute thus arises in litigating the merits of the complaint; a plaintiff is not required to sustain that ultimate burden to obtain a preliminary injunction.

Am. Ass'n of Nurse Practitioners, Scope of Practice for Nurse Practitioners , AANP (Winter 2015), https://storage.aanp.org/www/documents/advocacy/position-papers/ScopeOfPractice.pdf [https://perma.cc/MV68-Q96H].

Mont. Dep't of Labor & Indus., Montana Board of Nursing Recognized National Professional Organizations (NPO) for APRN Scope and Standards of Practice , DLI (Aug. 2018), http://boards.bsd.dli.mt.gov/Portals/133/Documents/nur/aprn_sop_documents.pdf [https://perma.cc/K3SJ-8YDH].

Nat'l Org. of Nurse Practitioner Faculties, Population-Focused Nurse Practitioner Competencies , NONPF 9 (2013), https://c.ymcdn.com/sites/www.nonpf.org/resource/resmgr/competencies/populationfocusnpcomps2013.pdf [https://perma.cc/H2NE-VFTN] [hereinafter NONPF, Competencies ]

Am. Coll. of Nurse-Midwives, Definition of Midwifery and Scope of Practice of Certified Nurse-Midwives and Certified Midwives , ACNM (Dec. 2011), http://www.midwife.org/ACNM/ files/ACNMLibraryData/UPLOADFILENAME/000000000266/Definition%20of%20Midwifery%20and%20Scope%20of%20Practice%20of%20CNMs%20and%20CMs%20Feb%202012.pdf [https://perma.cc/ASK9-EAWB].

Am. Coll. of Nurse-Midwives, Standards for the Practice of Midwifery , ACNM 1 (Sept. 24, 2011), http://www.midwife.org/ACNM/files/ACNMLibraryData/UPLOADFILENAME/000000000051/Standards_for_Practice_of_Midwifery_Sept_2011.pdf [https://perma.cc/RFK5-4C2Y] [hereinafter ACNM, Standards ].

Am. Coll. of Nurse-Widwives, Core Competencies for Basic Midwifery Practice , ACNM 5 (Dec. 2012), http://www.midwife.org/ACNM/files/ACNMLibraryData/UPLOADFILENAME/000000000050/Core%20Comptencies%20Dec%202012.pdf [https://perma.cc/N78R-K5ML] (emphasis added).

Am. Pub. Health Ass'n, Provision of Abortion Care by Advanced Practice Nurses and Physician Assistants , APHA (Nov. 1, 2011), https://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2014/07/28/16/00/provision-of-abortion-care-by-advanced-practice-nurses-and-physician-assistants [https://perma.cc/8JZ7-8QXS].

The California rule the Dissent cites shows that APRNs may be qualified by training to perform an abortion by aspiration techniques. Importantly, California does not have a statute prohibiting such practice; on the contrary, it allows APRNs to perform medication and aspiration abortions, the latter subject to "standardized procedures developed" by the Board of Registered Nursing. Cal. Bus. & Prof. Code §§ 2253, 2725.4 (LexisNexis 2019). According to Dr. Goodman's affidavit, the California law resulted from a six-year project evaluating the safety and efficacy of advanced practice clinicians providing early abortion. California, unlike Montana, has detailed statutes addressing many different medical procedures and prohibitions. See e.g. , Cal. Bus. & Prof. Code, div. 2, ch. 5 art. 12. Montana, by and large, leaves such matters to rulemaking by the appropriate licensing boards. See § 37-3-203, MCA (authorizing Board of Medical Examiners to adopt rules to carry out regulatory responsibilities for practice of medicine, podiatry, acupuncture, physician assistant practice, and nutritionist practice); § 37-8-202, MCA (prescribing rulemaking authority of Board of Nursing, including rules regarding authorization for prescriptive authority of advanced practiced registered nurses and educational requirements and other qualifications applicable to recognition of advanced practice registered nurses); § 37-8-409, MCA (requiring Board of Nursing to issue APRN certificates upon verification of "board-approved national certifying body appropriate to the specific field of advance practice registered nursing" and "other qualification requirements that the board prescribes"). Though largely unhelpful to the analysis, the California example lends support to the ripeness of Plaintiffs' claim that § 50-20-109(1)(a), MCA, poses a barrier to any such review by this State's Board of Nursing.

The Dissent does not address this prima facie evidence that, but for the statute, Weems imminently could provide her patients with the medication required for this procedure. It recognizes that whether APRNs safely and competently can provide abortions is "a question for the Montana Board of Nursing," Dissent, ¶ 32, but overlooks that the Board's rules authorize Weems to dispense medication without restriction.