FILED

08/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0661

DA 24-0661

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 181N

DOUGLAS W. BYRON, CAROL ANN
BYRON, DENNIS D. BYRON, CINDY
BYRON, MARK GOLDADE, LELAND
GOULET, DOUGLAS R. KIRKPATRICK,
GERI KIRKPATRICK, MITCHELL FAMILY
REVOCABLE TRUST dated 9/11/2018,
PIERCE J. SCHMAUS, BARBARA A.
SCHMAUS, CRAIG SICKLER, MICHELLE
SICKLER, and MURRAY VESTER,

        Plaintiffs and Appellees,

   v.

RAINBOW ESTATES HOMEOWNERS'
ASSOCIATION, INC.,

        Defendant,

MATTHEW G. TIEDJE, and TARA D. TIEDJE,

        Defendants and Appellants.

APPEAL FROM:   District Court of the Seventh Judicial District,
                In and For the County of Dawson, Cause No. DV-2024-28
                Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Chris Walker, Silverman Law Office, PLLC, Helena, Montana

      For Appellees:

          Albert R. Batterman, Batterman Law Offices, P.C., Baker, Montana

Submitted on Briefs:  June 4, 2025

Decided:  August 12, 2025

Filed:

_____
                    Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Matthew and Tara Tiedje appeal the Seventh Judicial District Court's order granting a preliminary injunction that prohibits them from conducting commercial activity on their property in the Rainbow Estates Subdivision. We affirm.

¶3 Rainbow Estates is a residential subdivision in Dawson County. The Subdivision's property owners are members of Rainbow Estates Homeowners Association and subject to the HOA's Bylaws. The Bylaws provide that, with one exception not relevant here, all lots in the Subdivision shall be used solely for residential purposes. The Tiedjes own property in the Subdivision and operate a thrift store called "Montana Hidden Treasures" from their garage and surrounding property.

¶4 In January 2024, Matthew Tiedje sent the other lot owners an e-mail soliciting feedback on his plans to construct a storage unit business with seventy-two units on his property. After receiving e-mail feedback, Matthew thought he had the support of at least seventy-five percent of lot owners to amend the Bylaws. His proposed amendment allowed the Tiedjes to conduct commercial activity on their property. Matthew went door-to-door collecting signatures from his neighbors who had e-mailed their support for the

amendment, but he avoided those who had not responded or responded with a "no" vote to the e-mail. The Tiedjes recorded the amendment with the Dawson County Clerk and Recorder.

¶5 In preparation for the storage unit business, the Tiedjes brought in truckloads of gravel, filling in a cul-de-sac and several of their adjacent lots. The Tiedjes had construction materials for the storage units delivered, including dozens of metal roll-up doors that they stored outside.

¶6 A group of lot owners (Neighbors) filed an application for preliminary injunction and temporary restraining order, seeking to enjoin the Tiedjes from using their property for commercial purposes. The District Court granted a temporary restraining order in May 2024. After holding a hearing on the application for preliminary injunction in September 2024, the District Court concluded that Neighbors were entitled to a preliminary injunction.

¶7 This Court reviews a district court's grant or denial of a preliminary injunction for a manifest abuse of discretion. *Montanans Against Irresponsible Densification, LLC, v. State*, 2024 MT 200, ¶ 8, 418 Mont. 78, 555 P.3d 759 (citation omitted) (*MAID*). A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *MAID*, ¶ 8 (citation omitted). A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *MAID*, ¶ 8 (quoting *Driscoll v. Stapleton*, 2020 MT 247, ¶ 12, 401 Mont. 405, 473 P.3d 386) (internal quotation marks omitted). We apply de novo review to a district court's decision on a preliminary injunction to the extent it was based on legal

4

conclusions. *Cross v. State*, 2024 MT 303, ¶ 12, 419 Mont. 290, 560 P.3d 637 (citation omitted).

¶8    The Tiedjes first argue that the District Court should not have considered the impacts from Montana Hidden Treasures in deciding Neighbors' application for a preliminary injunction. First, the Tiedjes assert that Neighbors' application for a temporary restraining order and preliminary injunction did not give them notice that it sought relief against Montana Hidden Treasures. The Tiedjes contend that testimony at the preliminary injunction hearing centered around the storage unit business, not Montana Hidden Treasures.

¶9    Neighbors' application for injunctive relief, however, requested a temporary restraining order

> prohibiting the Rainbow Estates Homeowners Association, Inc. . . . and Matthew Tiedje and Tara Tiedje . . . from violating the HOA Bylaws, including but not limited to constructing, building, developing, or operating a commercial business on any lot within the Rainbow Estates Subdivision pursuant to any purported Bylaw amendment or otherwise, without further order from the Court.

When it issued the temporary restraining order, the District Court used the same language, enjoining the Tiedjes from "violating the HOA Bylaws, including but not limited to constructing, building, developing, or operating a commercial business" on any lot in the Subdivision. The Tiedjes do not dispute that Montana Hidden Treasures is a commercial business, nor do they argue that this term is ambiguous as used in Neighbors' application or the temporary restraining order. The application and restraining order—issued months before the preliminary injunction hearing—gave the Tiedjes notice that the District Court

would consider "commercial" business, which encompassed Montana Hidden Treasures, in determining the preliminary injunction request.

¶10 The Tiedjes also examined witnesses about the impacts of Montana Hidden Treasures by, for example, asking several of Neighbors' witnesses whether they had shopped there. The Tiedjes chose not to object to Neighbors introducing testimony on Montana Hidden Treasures. "Generally, we will not review an issue to which a party has failed to object and preserve for appeal because the objecting party never gave the trial court an opportunity to address and correct any perceived errors." *State v. Johnson*, 2011 MT 286, ¶ 14, 362 Mont. 473, 265 P.3d 638 (citation omitted). Because the Tiedjes failed to object to questioning about Montana Hidden Treasures and chose to cross-examine witnesses on this issue, they have not preserved a due process argument for lack of notice. The record demonstrates that the Tiedjes had actual notice that the District Court would consider the thrift store when deciding whether to issue an injunction; and they participated fully at the preliminary injunction hearing, undermining any claim of prejudice.

¶11 The Tiedjes next contend that the District Court erred in considering the impacts from Montana Hidden Treasures because the last peaceable condition, or status quo, prior to litigation included the thrift store. For reasons discussed below, however, we conclude that evidence of the Tiedjes' plans and preparations for the storage unit business justify the preliminary injunction even without considering the impacts from Montana Hidden Treasures.

¶12 The Tiedjes argue that Neighbors failed to meet their burden of proof to obtain a preliminary injunction. "A preliminary injunction is an extraordinary remedy never awarded as of right." *MAID*, ¶ 10 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376 (2008)). The purpose of a preliminary injunction is to maintain the status quo, or "to preserve the relative positions of the parties until a trial on the merits can be held." *Cross*, ¶ 52 (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346, 144 S. Ct. 1570, 1576 (2024)). "The status quo is the last actual, peaceable, noncontested condition [that] preceded the pending controversy." *Stephenson v. Lone Peak Preserve, LLC*, 2025 MT 148, ¶ 14, 423 Mont. 46, ___ P.3d ___ (quoting *Flying T Ranch, LLC v. Catlin Ranch, LP*, 2022 MT 162, ¶ 28, 409 Mont. 478, 515 P.3d 806).

¶13 Section 27-19-201(1), MCA, requires an applicant to establish four factors to obtain a preliminary injunction:

   (a) the applicant is likely to succeed on the merits;

   (b) the applicant is likely to suffer irreparable harm in the absence of preliminary relief;

   (c) the balance of equities tips in the applicant's favor; and

   (d) the order is in the public interest.

An applicant for an injunction under § 27-19-201(1), MCA, bears the burden of demonstrating the need for injunctive relief. Section 27-19-201(3), MCA. Because this test is conjunctive, the applicant must establish each element. *Stephenson*, ¶ 13 (citation omitted); *Cross*, ¶ 19 (citation omitted).

7

**Likelihood of Success on the Merits**

¶14 The District Court concluded that Neighbors had established a likelihood of success on the merits "because they have shown the Defendants violated the Bylaws." To show a likelihood of success on the merits, a plaintiff "must present a prima facie case but need not show a certainty of winning." *Cross*, ¶ 33 (quoting 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 2948.3 (3d ed. 2008)). "Prima facie means literally at first sight or on first appearance but subject to further evidence or information." *Cross*, ¶ 33 (quoting *Weems v. State*, 2019 MT 98, ¶ 18, 395 Mont. 350, 440 P.3d 4). "In deciding whether an applicant has established a prima facie case, a court should determine whether a sufficient case has been made out to warrant the preservation of the property or rights in status quo until trial, without expressing a final opinion as to such rights." *Sweet Grass Farms, Ltd. v. Bd. of Cnty. Comm'rs of Sweet Grass Cnty.*, 2000 MT 147, ¶ 28, 300 Mont. 66, 2 P.3d 825 (citation omitted).

¶15 The Bylaws provide the following process for amendment: "These Bylaws may be amended by the [HOA] in a duly constituted meeting for such purpose and no amendment shall take effect unless approved by at least seventy-five percent (75%) of the unit owners." Additionally, "[a]ll present or future owners . . . or any other person that might use the facilities of the development in any manner, are subject to the regulations set forth in the[] By-laws." Matthew testified that, in order to amend the Bylaws, he sent an e-mail to all property owners in the Subdivision, then collected signatures from those who responded favorably to his suggested amendment. He admitted that the HOA did not hold a meeting

8

to vote on his amendment. Despite making efforts to amend the Bylaws, Matthew also testified that he was not bound by them.

¶16 The Tiedjes do not dispute that they own property in the Subdivision or use the facilities of the development. On first appearance, as owners of real property in the Subdivision, the Tiedjes are bound by the Bylaws. Matthew's concession that there was no meeting on his proposed amendment forms the basis for a prima facie case that the Tiedjes did not follow the correct procedure to amend the Bylaws.

¶17 The Tiedjes respond that the Bylaws are unenforceable; they assert various affirmative defenses, including waiver and estoppel. The application of their defenses, the Tiedjes contend, shows that Neighbors are unlikely to succeed on the merits. We find it unnecessary to consider the Tiedjes' defenses prior to a merits determination at the trial court. *See Porter v. K & S P'ship*, 192 Mont. 175, 177-78, 627 P.2d 836, 837 (1981) (reasoning that it would be "premature" to consider defenses on preliminary injunction appeal before a final determination from the trial court). The Tiedjes will have the opportunity to develop a record on their affirmative defenses during the merits phase of the case. But based on the preliminary injunction record, the District Court did not manifestly abuse its discretion in finding that Neighbors were likely to succeed on the merits.

**Irreparable Harm**

¶18 An applicant for a preliminary injunction must show that irreparable injury is likely, not merely speculative. *Cross*, ¶ 47 (citation omitted). "[H]arm is irreparable if legal remedies, like an award for damages, are an inadequate remedy." *Cross*, ¶ 47 (citation

9

omitted). The District Court found that Neighbors had demonstrated a likelihood of irreparable harm through their testimony on the impacts of the development.

¶19 Geri Kirkpatrick—who lives across from the Tiedjes and their proposed storage unit business—testified that there has been an increase in dust since the Tiedjes brought in truckloads of gravel. After living in the Subdivision for forty years, Geri said that she knows the dust is not coming from another road because it now has a different color and is more frequently disruptive. Because of the dust, Geri rarely opens her front windows. Geri testified that the excess gravel has caused drainage issues on a Subdivision road, making it rutted and potholed. She anticipated that the storage unit business would require lighting and fencing and would cause additional traffic, noise, and litter in the Subdivision.

¶20 Quoting *MAID*, ¶ 19 ("generalized fears and supposition" about potential injury insufficient for finding of irreparable harm), the Tiedjes assert that the hearing testimony established at best speculative injury. As the storage unit developers, the Tiedjes claim that they "provided the only competent testimony regarding the likely impacts of that operation," including that their gravel has not caused any increase in dust or road drainage issues and that the storage unit business will not lead to increased traffic. This case, the Tiedjes maintain, is about breach of contract, which is not an irreparable injury.

¶21 First, it is not our role "to reweigh conflicting evidence or to question a district court's assessment of the strength of the evidence on a preliminary injunction appeal." *Cross*, ¶ 38 (citation omitted). We do not second-guess the District Court's finding, based on the affidavits and testimony, that "[t]he storage facility and retail thrift store will cause

10

an increase in traffic in the subdivision which will result in increased wear and tear of the subdivision infrastructure and disruption to the residential nature of the subdivision."

¶22 Neighbors do not allege a speculative or tenuous injury like the plaintiff in *MAID*. There, the only evidence the plaintiff submitted in support of irreparable injury was an affidavit "alluding to the *possibility* of finding a multi-unit building or a duplex, or an accessory dwelling unit going up next door." *MAID*, ¶ 19 (internal quotation marks omitted and emphasis added). Unlike in *MAID*, ¶ 19, the Tiedjes have taken concrete steps towards opening a storage unit business that likely would violate the residential Bylaws. Testimony indicates that these preparations already have caused excessive dust and road damage. The Tiedjes have had materials and gravel delivered and they even bought additional lots in the Subdivision where they intend to place the storage units. Although increased lighting, fencing, and traffic are future effects of the business, the evidence showed that they are sufficiently likely to support the District Court's finding of irreparable injury.

¶23 Second, we find no fault with the District Court's apparent assessment that monetary damages would not remedy the effects of a storage unit business in a subdivision that prohibits commercial activities. In *Sweet Grass Farms*, ¶ 32, we held that the impacts from introducing a subdivision into a primarily agricultural area, including increased traffic, noise, dust, and "irreparable loss of the agricultural character of the area," supported the issuance of a preliminary injunction. Likewise, introducing a seventy-two-unit storage business into an otherwise residential subdivision could permanently change the Subdivision's character before a ruling on the merits.

11

¶24 This Court should vacate the injunction, the Tiedjes contend, and allow them to continue developing the storage facility because the alleged harms to Neighbors are temporary and capable of being redressed after the merits proceeding. The Tiedjes maintain that if the court rules for Neighbors on the merits, the court could still restore the parties to their original position. This argument is unpersuasive. If the Tiedjes continue to develop the seventy-two unit storage facility, a merits ruling from the District Court in Neighbors' favor would then require them to reverse course, evict their tenants, and tear the units down. Allowing the Tiedjes to continue construction while awaiting a merits determination would be inconsistent with the purpose of a preliminary injunction—to preserve the "last actual, peaceable, noncontested condition [that] preceded the pending controversy." *Stephenson*, ¶ 14 (quoting *Flying T Ranch*, ¶ 28). The District Court therefore did not obviously, unmistakably, or evidently abuse its discretion when it ruled that irreparable harm was likely in the absence of a preliminary injunction.

**Balance of the Equities and the Public Interest**

¶25 The third element of the preliminary injunction inquiry asks whether the equities tip in the applicant's favor. Section 27-19-201(1)(c), MCA. The District Court concluded that the balance of the equities tips in Neighbors' favor because "the potential impacts of the development outweigh the risks of not developing the lots." The Tiedjes argue that the equities tips in their favor because if they cannot continue to develop the storage facility, they will be unable to repay a loan and will be forced to file for bankruptcy. From the preliminary record, however, the District Court found that the Tiedjes did not properly

12

amend the Bylaws but were taking steps to develop their property into a large storage facility in violation of the Bylaws' plain limitation that properties may be used only for residential purposes. The equities do not favor a violation of restrictive covenants simply because the party has made financial commitments to that violation.

¶26 The Tiedjes maintain, however, that the District Court contributed to the inequities against them when it extended the temporary restraining order. The District Court, the Tiedjes assert, "rescheduled and delayed the show cause hearing, often with no regard to whether the Tiedjes consented or objected to the delays," subjecting them to the temporary restraining order for four months. The record reflects that the court extended the temporary restraining order first after the Tiedjes consented, again due to a scheduling conflict, and finally when the parties requested more time to explore settlement. Although the court did not cite its rationale for one such extension, the Tiedjes did not object to the delays or give the trial court an opportunity to rectify its error. Absent an objection, the Tiedjes did not preserve this issue for appeal. *See Johnson*, ¶ 14 (citation omitted).

¶27 The Tiedjes also contend that the equities weigh in their favor because the District Court did not provide an explanation when it waived the requirement that Neighbors post a written undertaking. In waiving the undertaking requirement, the court did, however, state that "[i]mmediate cessation of all development activities does not appear to threaten any loss to the Defendant[s]." The court also found specific harms to Neighbors, including to their ability to protect their properties from disruption and to enforce their rights under the Bylaws.

¶28 A district court has discretion to waive the undertaking requirement under § 27-19-306(b)(ii), MCA, when it finds waiver to be in the interests of justice. *Shammel v. Canyon Res. Corp.*, 2003 MT 372, ¶ 37, 319 Mont. 132, 82 P.3d 912 (citation omitted). Section 27-19-306, MCA, does not require a court to make specific findings before waiving an undertaking. Concluding that it was in the interest of justice, the District Court here properly exercised its discretion to waive the undertaking requirement. Although the court did not make detailed findings, its conclusion that development posed no immediate loss to the Tiedjes, combined with its equitable findings, sufficiently supports the waiver. In sum, the court did not abuse its discretion when it found that the equities tip in Neighbors' favor.

¶29 An applicant also must establish that the injunction is in the public interest. Section .27-19-201(1)(d), MCA. "The public interest factor 'is another way of inquiring whether there are policy considerations that bear on whether' to grant an injunction." *Cross*, ¶ 53 (quoting Wright & Miller § 2948.4). The District Court found this factor satisfied. Its preliminary injunction serves to maintain the status quo until the court can make a merits determination whether the Tiedjes' activities violate the Bylaws or whether the Bylaws have been abandoned. Until then, the injunction serves the public interest by minimizing the impacts to other property owners in the Subdivision and protecting their rights under the contractual Subdivision Bylaws. Though the public interest includes respect for private property rights, here those rights are contractually limited by the covenants to which all lot owners agreed. Without "anticipat[ing] the ultimate

14

determination of the questions of right involved" here, public policy supports compliance with restrictive covenants. *Sweet Grass Farms*, ¶ 38 (quoting *Porter*, 192 Mont. at 183, 627 P.2d at 840). The District Court did not err in concluding that maintaining the residential nature of the Subdivision pending final determination of the merits is in the public interest.

¶30 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not manifestly abuse its discretion in finding that Neighbors established each required element for a preliminary injunction under § 27-19-201(1), MCA. The preliminary injunction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON